WALLACE, JUDGE:
This claim was filed against the respondent by American Bridge Division of United States Steel Corporation and American Bridge Division of United States Steel Corporation, on behalf of Foster & Creighton Company, a corporation (hereinafter referred to as Foster & Creighton).
United States Steel Corporation, through its American Bridge Division, entered into a contract with the respondent, dated June 28,1973, to erect the New River Gorge Bridge in Fayette County, West Virginia [Project AC-APD-APD-482(52)], for the total amount of $33,984,011.55. Foster & Creighton Company was a subcontractor of U.S. Steel. This bid was twelve million dollars under the engineer’s estimate and five million dollars under the closest competitor. American Bridge seeks to recover $1,508,260.39 and for the Foster & Creighton portion of the claim, $306,409.15, for additional costs incurred due to alleged changed conditions in the work site.
The bridge was to be constructed on a series of piers or bents numbered one to twenty-two from the south side of the gorge to the north side. To construct the bridge, U.S. Steel erected a twin cableway system to move the structural steel to the piers and arch span. The cableway consisted of two tramway towers on each side of the gorge with two trolleys to carry the steel. The towers were secured by tie back anchors on each side of the gorge.
The south end of the cableway collapsed on March 25, 1975, and was not back in operation until July. This caused a three-month delay in the placement of steel. Damages sustained by reason of this tower collapse are not being claimed in this action.
In accordance with the planned sequence, Foster & Creighton commenced excavations at the northernmost pier, number twenty-two. Adequate rock foundation was not reached at the depth indicated by the contract. The respondent directed that the work cease on the pier and redesigned the footer.
*228 Subsequent to this, additional problems were encountered and it became necessary for the respondent to redesign the footers on Piers 21, 1,3, and 4, and a mine haul road had to be relocated necessitating the construction of a retaining wall to hold the relocated road.
The claimant contends that because of these redesigns and modifications it is entitled to an equitable adjustment under Section 104.2 of the Standard Specifications Roads and Bridges, adopted 1972, of the West Virginia Department of Highways. This section provides in part:
“Should the contractor encounter or the Department discover during the progress of the work subsurface or latent physical conditions at the site differing materially from those indicated in the contract, or unknown physical conditions at the site of an unusual nature, . . . and if the Engineer finds the conditions do materially differ and cause an increase or decrease in the cost of, or the time required for performance of the contract, an equitable adjustment will be made and the contract modified in writing accordingly.”
By reason of the redesign and modifications made by the respondent, the claimant was required to do additional work, and the planned sequence of work was disrupted while the redesign work was being accomplished by the respondent. Additional exploratory drilling was required as well as additional structural excavation and the pouring of additional concrete.
The respondent recognized that it was necessary that additional work be performed and did pay the subcontractor for the quantity of the work performed and extended the completion date of the contract from October 1, 1976, to October 11, 1977. The contract was completed on October 14, 1977, and three days liquidated damages of $900.00 were assessed.
The claimant contends that although the respondent paid the subcontractor for the increase in quantities, it is entitled to be compensated for additional costs resulting from having to alter the sequence and method of work.
The respondent contends that the general provisions of the contract allowed for the change in dimensions and elevations when necessary; that the contractor was adequately compensated for any additional work and that there were no differing site conditions that were within reasonable probability of being encountered.
*229 During the period in which the sequence of the work was being delayed, claimant attempted to commence the construction of the tie back anchor for the cableway on the south side of the gorge. The tie back anchor was to be located in an area to be cleared by the grading contractor, Greer Brothers and Young. The clearing work had not been completed, and to accelerate this work, claimant agreed to Change Order No. 1, dated September 11, 1973, wherein the claimant’s contract was reduced by $28,000.00, and a like amount was added to the contract of Greer Brothers and Young to compensate it for additional costs incurred by changing its original sequence of construction. The change order required the excavation to be completed by October 20, 1973. The excavation was actually completed on November 9, 1973, and claimant contends the $28,000.00 should be restored to its contract.
The Court is of the opinion that the claimant is entitled to an equitable adjustment necessitated by changed site conditions. This adjustment should be in addition to the compensation received for the increase in quantities and the granting of an extended contract completion date.
The claimant is seeking to recover the total sum of $1,814,669.54. The evidence adduced at the hearing was extensive and all-inclusive. Although the Court is of the opinion that claimant is entitled to an equitable adjustment, such an adjustment is not warranted to the extent or in the amount claimed. After careful consideration of the evidence, the Court finds that the claimant is entitled to an award of $518,505.65 and a restoration of one-half of the $28,000.00 deducted from the contract to compensate for the excavation work of Greer Brothers and Young. Although Greer Brothers and Young did not complete the excavation in the time required by Change Order No. 1, the claimant was benefited by the change order which enabled work to commence on the installation of the south side tie back anchor earlier than would have been possible without the change order.
The amount of the award was calculated as follows. The monetary damages in the American Bridge Division of U.S. Steel Corporation portion of the claim are shown in Claimant’s Exhibit 41. It is alleged that 6,383.3 man-hours were lost due to subsurface problems prior to the start of the erection of structural steel. The Court finds this figure excessive and bases its award in this portion of the claim on 2,000 lost man-hours. This figure is multiplied by $8.71, which represents the average hourly wage rate. The direct labor additive is calculated at 33%, and not the claimed 49%. The Court has arrived at this figure by removing the department overhead cost. This provides an award for labor prior to the start of steel erection of $23,168.60.
*230 The total amount of lost man-hours claimed by American Bridge for labor after the start of erection is granted, but the Court again reduces the direct labor additive to 33%. This labor figure is $254,217.46. In both labor figures, the Court has eliminated general and administrative expenses and profit.
All claims for equipment costs and fixed expenses have been eliminated as the Court finds these figures to be speculative. The Court has calculated the State Business & Occupation Tax at 2.2% and the performance bond at .18% and added the $14,000.00 for the change order to arrive at the total award for the American Bridge Division of United States Steel Corporation portion of the claim of $297,987.84.
Tbe claim for the Foster & Creighton portion of claimant’s claim is found in Claimant’s Exhibit 48. The claims for equipment rentals from itself and from other companies are denied as speculative. This-is also true of the claim for fuel for the equipment. The claims for salaried personnel and job site office expense are awarded, but no award is made for headquarter expense or markup. State B & O Tax of 2.2% and performance bond at .36% are again granted. This results in a total figure of $189,837.11. Claimant reduced its total requested award for manpower and equipment by 46% to reflect the actual amount of time used in excavation. The Court employs a 56% figure, instead of the 46%, because claimant bases its figure on ideal estimated production rates which the Court finds are overly optimistic. This results in a partial award of $83,528.33 for salaried personnel and job site office expense. An award of $150,989.48 is granted for labor on structural excavation. This figure does not include labor costs incurred on the retaining wall or on the change order on the bridge. State B & O Tax of 2.2% and the performance bond at .36% once again are granted on the resultant labor cost. Labor insurance and markups are denied. The Court does not need to consider the deduction of 64% for effective utilization of excavation force since the equipment costs are not awarded and the estimated figures too speculative, as these are again based on the ideal. The total award as calculated for the Foster & Creighton portion of claimant’s claim is $234,517.81.
In accordance with the provisions of West Virginia Code §14-3-1, interest at 6% per annum is calculated on this award based on the final acceptance date of the project of May 5, 1978. Interest is allowed from the one hundred fifty-first day after the date of final acceptance, October 3, 1978, until the issuance date of this opinion, January 25, 1985.
*231 Award of $532,505.65, with interest in the amount of $201,943.65, for a total award of $734,449.30.